PEERLESS CASUALTY COMPANY v. DANIEL.

Opinion delivered February 13, 1928.

1. INSURANCE—NOTICE OF DISABILITY.—In an action on a disability and illness insurance policy, evidence *held* to warrant the jury's finding that insured gave notice within ten days of the time when he had reasonably concluded that his disability from sickness had begun under the policy, as required by its provisions.

2.  INSURANCE—REINSTATEMENT—APPEARANCE OF GOOD HEALTH.—In an action on a disability policy in which the insurer denied liability on the ground that insured was not in good health at the time of his reinstatement in June, 1925, it was not error to admit evidence that insured appeared to be in good health in May, 1925.

Appeal from Saline Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*Brouse & McDaniel,* for appellant.

*A. C. Thomas* and *W. R. Donham,* for appellee.

SMITH, J. Appellee, as administratrix of the estate of John W. Daniel, deceased, and in her own right, filed suit against the appellant insurance company to recover a sum alleged to be due by reason of a contract contained in a certain insurance policy issued by the said company to the said John W. Daniel in his lifetime, wherein the company agreed to insure the said Daniel against loss of time on account of disability from illness in the sum of $50 per month.

The policy contained the provision that: "Written notice of injury or of sickness on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury, or within ten days after the commencement of disability from such sickness." Another provision of the policy required strict compliance with all the terms and conditions of the policy as a condition precedent to a recovery thereunder, and provided that a failure in this respect should forfeit to the company all rights to any indemnity.

The insured had failed to pay certain assessments or premiums, as a result of which the policy lapsed, but he was reinstated in June, 1925, by paying the delinquent premiums and by furnishing a certificate that he was in good health at the time of his reinstatement.

The insurance company denied liability upon the grounds that notice of disability had not been given within the time required by the policy, and also that the insured was not in good health at the time of his reinstatement.

There was a verdict and judgment in favor of the plaintiff, from which is this appeal, and for the reversal of the judgment it is insisted that, under the undisputed testimony, a verdict should have been directed in appellant's favor on account of the failure to give notice, and also because the insured was not in good health, as he had warranted himself to be, at the time of his reinstatement. It is also insisted that the judgment should at least be reversed on account of the admission of certain incompetent testimony, and because of the error in submitting the question as to whether the insurance company had waived the requirement of notice as to the insured's illness.

It was contended by the plaintiff that proper notice of the insured's illness had been given, and also that there had been a waiver of this requirement as a result of the correspondence between the parties in regard to proof of the claim for the sick benefits. As we have concluded that the jury was warranted in finding that proper notice was given, we do not consider whether the testimony did not also warrant the finding that this requirement had been waived.

The testimony on the part of the plaintiff was to the effect that the insured operated a small store, and, in connection with this business, ran a truck from his store to both Hot Springs and Little Rock, from both of which cities he hauled the merchandise in his truck which he sold in his store. Insured became ill about the 4th of July, 1925, but evidently did not regard his illness as serious until about the 27th of that month, at which time he first consulted a doctor. The doctor advised the insured to rest from his usual employment for a period of ten days, and later renewed that advice. The insured was not confined to his bed until the 15th of August, and, even after that, went to his store, over which he continued to exercise supervision. Mrs. Daniel testified that her husband, the insured, "finally took his bed and was confined to his room about the last of September, some time in September, when he became worse and was not able

to go to the store. He was not able to work after that. He went to bed on the rest cure about August 15.''

The court gave, at the request of the appellant insurance company, an instruction which told the jury that the plaintiff could not recover if the jury found that the insured was not in good health or was suffering from any ailment in June, 1925, when the insurance was reinstated.

The jury was told in another instruction, at the request of appellant, that, before the plaintiff could recover, it must be found by a preponderance of the evidence ''that all of the material terms of said contract were complied with by the deceased, and, unless you find from a greater weight or preponderance of the testimony in this case that deceased did comply with the terms of the contract, then the plaintiff cannot recover, and your verdict will be for the defendant company.''

Written notice of the illness of the insured was mailed to the insurance company on September 14, 1925, and the illness of the insured continued until September 23, 1926, at which time he died.

The insuring clause of the policy contains the following relevant provisions as to the obligations assumed by the insurer:

''Section (B). Disability resulting from illness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for fifteen days from its date, hereinafter referred to as 'such illness,' and

''Section (C). Indemnity will be paid for 'such injury' or 'such illness' only for the time the insured is under the professional care and regular attendance of a legally qualified physician or surgeon, at least once in every seven days.''

The insured, when he first became ill, was not under the care of a physician at least once in every seven days, and he did not go under such care until in September, and he gave the notice within ten days of the time when he did so go under the regular care of a physician every

seven days. The testimony shows that, while the insured did not run his truck after the 15th day of August, he was up and occasionally at his store until September.

The policy provides for indemnity against disability, and no indemnity was to be paid until disability began, and the insured claimed no indemnity until he asserted his disability, and we think the jury had the right to find, from the above testimony, that the insured gave the notice within ten days of the time when he had reasonably concluded that his disability had begun. The insurance was not against sickness merely, but against disability caused by sickness, and we conclude therefore that the jury was warranted in finding that due notice of the disability was given. It is not questioned that the insured was in fact disabled by sickness during the entire period for which the disability benefit was claimed.

Plaintiff offered testimony to the effect that the insured was in good health when the policy here sued on was reinstated, in June, 1925, and among the witnesses so testifying were L. C. Smith and W. J. Canady, and it is insisted that error was committed in admitting the testimony of these two witnesses.

Smith testified that he was a soliciting agent for the Missouri State Life Insurance Company, and that he took an application from the said J. W. Daniel for a policy of insurance in that company in May, 1925. The witness was asked: "You remember that it was in May, 1925, that you took the application?" An objection to this question was overruled, and the witness answered: "Yes, the policy was issued, it seems to me, something like a week after I took the application." The witness was then asked: "So far as you were able to tell, at that time Daniel was in good health, was he not?" An objection to this question was overruled, and the witness answered: "He seemed to be in as good health as any man I ever took an application from."

The witness Canady testified that he, too, was a soliciting agent for an insurance company, and that he took an application from Daniel on May 15, 1925, for a

policy, which was delivered on June 1, 1925, and that Daniel appeared to be in good health at that time, and that witness ''had to beg him about two weeks to take the policy.''

No objection appears to have been made to the questions asked Canady or to the answers given by him, and the questions asked the witness Smith appear to be competent. It was competent for any witness who knew the insured at the time of his reinstatement to testify that the insured appeared then to be in good health, and the incident related by the witness about taking the application of Daniel in May, 1925, is a mere circumstance fixing the time at which the applicant appeared to be in good health. No objection was made to the testimony upon the ground that it would not be competent to prove that the insured was in good health by proving that another insurance company had issued a policy about the time of the reinstatement. The court would, no doubt, have instructed the jury that the testimony was not competent for that purpose had such a request been made, but it was not.

The testimony warranted the jury in finding that a proper notice of disability was given, and, as no error appears in the record, the judgment must be affirmed, and it is so ordered.